FILED
IN CLERK'S OFFICE
U S. DISTRICT COURT E.D.N.Y

★ JUN 0 6 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

S.A.,

      Plaintiff,

– against –

NEW YORK CITY DEPARTMENT OF
INFORMATION TECHNOLOGY AND
TELECOMMUNICATIONS,

      Defendant.

**MEMORANDUM
& ORDER**

09-CV-2436

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction .................................................................................................................. 2
II. Facts ............................................................................................................................. 3
 A. Relationship with M. .............................................................................................. 3
 B. Incident of Misconduct with EEO Director .......................................................... 4
 C. Settlement of Conduct Violation ............................................................................ 4
 D. Initial EEOC Complaint by S.A. ............................................................................ 5
 E. Subsequent Performance and Civil Service Examinations .................................... 5
 F. Composition of Service Desk ................................................................................. 5
 G. Dispute with Service Desk Colleagues .................................................................. 6
III. Law ............................................................................................................................... 7
 A. Summary Judgment Standard ................................................................................. 7
 B. Discrimination ........................................................................................................ 7
 C. Retaliation .............................................................................................................. 8
IV. Application of Facts to Law ......................................................................................... 9
 A. Discrimination ........................................................................................................ 9
 B. Retaliation ............................................................................................................ 10
V. Conclusion .................................................................................................................. 11



## I.  Introduction

Defendant moves for Summary Judgment. It is granted. Pro se plaintiff S.A. sues the New York City Department of Information Technology and Telecommunications ("DoITT" or "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

S.A. has been a Service Desk Analyst with the DoITT since November 2004. She charges that an unjustified internal EEO complaint filed by a fellow employee, "M," with whom she had been romantically involved, resulted in undeserved reprimands to herself.

Plaintiff filed her own EEO claim in September of 2008 alleging religious, race, and gender discrimination. A Right to Sue letter was issued on March 6, 2009. The present action was filed on June 9, 2009. She claims the following retaliatory and adverse actions: schedule change from the night shift to the day shift against her wishes, and failure to promote her.

Defendant moves for summary judgment on the grounds that 1) S.A. has not established a prima facie case of discrimination or retaliation; 2) defendant had legitimate non-discriminatory business reasons for its actions; and 3) DoITT is not a suitable entity; the claim should be brought against the City of New York.

Plaintiff presents no evidence to establish a prima facie case of discrimination based on gender, race or religion. Retaliation has not been, and cannot be shown. Adequate non-discriminatory business reasons explain defendant's course of action. While plaintiff has sketched the minimum requirements for a retaliation claim, she presents no evidence to challenge or contradict DoITT's non-discriminatory reasons for altering her work schedule or failing to promote her.

## II. Facts

### A. Relationship with M.

Plaintiff's claim arises from a 16-month consensual relationship between the plaintiff and another DoITT employee, M. It began in March 2006. M., who was married throughout their affair, attempted to end it in July 2007. In the following months, plaintiff called his house a number of times, prompting M. and his wife to lodge a complaint with the Suffolk County Police Department. The Suffolk County Police contacted plaintiff, advising her to refrain from contacting M.

S.A. approached DoITT's EEO Director in the Fall of 2007 about the situation. Def. Ex. B, Plaintiff Deposition, at 116:8-10. The Director advised S.A. that it would be best if she made no further attempts to contact M. at work or elsewhere, and that if she did, M. could lodge an internal EEO complaint. *Id.* at 119:5-13. The Director received clothes of M.'s that S.A. wished to return, and independently returned them to M. *Id.* at 119: 5-7; Def. Ex. G, Deposition of DoITT EEO Director, 60: 3- 62:15.

On November 2, 2007 S.A. made calls to M.'s cell phone and his DoITT desk phone. M., who had spoken with the Director about the situation during the clothing exchange, filed an EEO complaint of sexual harassment against the plaintiff. Defendant's Ex. I, EEO Complaint. Pursuant to DoITT policy, the Director opened an investigation into S.A.'s behavior. She notified S.A. of the investigation on November 30 and invited her written response. Def. Ex. J, Nov. 30 Notice of Complaint. S.A. responded with a brief letter from her lawyer stating only that the "allegations in the complaint do not rise to the level of sexual harassment." Def. Ex. M, Jan. 4 Letter from Atty. Thomas Bello.

On April 7, Plaintiff was informed by letter that the DoITT had substantiated the

3

allegation of sexual harassment of M. It directed her to take a "refresher sexual harassment training course" and to cease contacting M.

### B. Incident of Misconduct with EEO Director

Upset about the outcome of the investigation, on or about April 9, S.A. called the Director. She made threatening remarks to her. The Director reported this behavior to DoITT Commissioner and to the Office of Labor Relations. Def. G, Dep. of DoITT Director, 37:6-9.

DoITT officials then followed the disciplinary procedure outlined in their Collective Bargaining Agreement governing reprimands of provisional employees. Def. V, Labor Relations Memo, Bates No. LR0003; Def. B, Plaintiff's Dep., 144: 18-19. On May 8, plaintiff attended a disciplinary conference with DoITT Labor Relations staff and an OSA grievance officer. Def. B, Plaintiff's Dep., 144: 2-6, 148: 11.

### C. Settlement of Conduct Violation

With the help of the grievance officer and her lawyer, *Id.* at 147: 21-23, S.A. signed a stipulation of settlement that resulted in a reprimand being placed in her personnel file for 6 months, after which time it would be expunged. Def. Ex. Z, Stipulation of Settlement.

During the settlement discussions plaintiff spoke with the Director of Labor Relations who urged her to accept the stipulation. In response to S.A.'s statement that she "was Roman Catholic and I do not lie and didn't lie..." The Director of Labor Relations stated that plaintiff had "probably said something very intimidating to [the EEO Director]" and advised S.A. to sign the settlement. Def. W, Dep. of Director of Labor Relations, 17:4. According to plaintiff, a Catholic, he also stated, "How did you get a Jewish name like S.A.?" Def. B, Plaintiff's Dep., 158: 16-22.

4

### D. Initial EEOC Complaint by S.A.

As already noted, plaintiff filed an EEOC complaint in September of 2008, and received a Right to Sue letter on March 6, 2009. After she filed the present action on June 9, 2009, she claims she suffered retaliation in the form of failure to promote and an involuntary schedule change.

### E. Subsequent Performance and Civil Service Examinations

Plaintiff has received yearly appraisals for 2007, 2008, and 2009 noting her performance as "Good". Def. Ex. AA, Plaintiff's Performance Reviews. She claims that her 2009 review, received in early 2010, was more critical than the previous years. Def. Ex. BB, Retaliation Charge of Discrimination, Bates No. RCD000001. It referenced "isolated incidents that reflected poorly on [S.A.] and the Service Desk," and noted specifically the plaintiff's "rude and disrespectful" behavior towards the security staff at Metro Tech Center, where the Service Desk is located, in August of 2009. Def. Ex. AA, S.A. Performance Review 2009, Bates No. S000012. Def. Ex. BB, Retaliation Charge of Discrimination, Bates No. RCD000001.

During the period of this controversy plaintiff sat for eight Civil Service Exams for advancement within the DoITT. The plaintiff's "list number," which is assigned to her based on test performance, was more than 100 candidates lower than the individuals who were chosen to fill the positions for which she applied. Def. Ex. D, Affidavit from Martha G. Pierre, Director of Certification for NY Department of Citywide Administrative Services, 3-4.

### F. Composition of Service Desk

The DoITT service desk is composed of some thirty-seven employees, including a Director, a Liaison, five managers and twenty-five desk analysts. According to plaintiff's testimony there are "nine" females, "eighteen" white-Americans, and "ten" Roman Catholics.

Def. Ex. B, Plaintiff's Dep., 95:22-23, 97:3-9, 11-14.

### G. Dispute with Service Desk Colleagues

On May 19, 2010 plaintiff was involved in a dispute with her night-shift colleagues and supervisor about work distribution. Ex. BB, Plaintiff's Retaliation Charge of Discrimination, Bates Label, No. RCD000003. When a shift Supervisor directed that tickets be equally distributed amongst the three Service Desk Agents, plaintiff protested. *Id.* This led to a verbal exchange in which the plaintiff alleged that some individuals in the department were only promoted because of sexual relationships with DoITT management. *Id.* The supervisor stated that if the plaintiff and the other agent did not cease their discussion she would call the Director. Plaintiff responded "I don't care if you call the Pope or your Mother, I wish you would." *Id.* Plaintiff was asked to attend a "Discussion Meeting" with the Service Desk Director, in which he explained that he had received complaints about her behavior. *Id.*

Previously, on May 14, 2010, DoITT desk managers had requested night shift analysts to volunteer for the day shift, which was receiving an increased volume of calls. *Id.* The Service Desk Director decided that the closer supervision of the plaintiff afforded by the day shift might prevent plaintiff's participation in further verbal altercations. Def. Ex. CC, Affidavit of Service Desk Dir., ¶ 13. On May 26, plaintiff was moved to the day shift against her wishes. Ex. BB, Plaintiff's Retaliation Charge of Discrimination, Bates Label, No. RCD000004. At the same time, a service desk agent of Middle Eastern descent was also rescheduled involuntarily to the day shift from the night shift. Def. Ex. CC, Affidavit of Service Desk Dir., ¶ 14.

According to S.A., this change resulted in a loss of income of approximate $11,000 annually, parking privileges, and personal hardship. Def. Ex. BB, Plaintiff's Retaliation Charge of Discrimination, Bates Label, No. RCD000003.

## III. Law

### A. Summary Judgment Standard

Summary judgment is appropriate if, after construing the facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009); *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009); Fed. R. Civ. P. 56(c).

### B. Discrimination

Employment discrimination claims based on race or sex brought under Title VII, ADEA, and NYCHRL are analyzed under the *McDonnell Douglas*, 411 U.S. 792, 802-804 (1973), framework. S*ee Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005); *Weinstock v. Columbia Univ.*, 244 F.3d 33, 42 n.1 (2d Cir. 2000). A plaintiff must establish a prima facie case of discrimination, which is "satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action, and preference for a person not of the protected class." *James v. New York Racing Ass'n*, 233 F.3d 149, 153-154 (2d Cir. N.Y. 2000) (internal citations omitted).

With regard to disciplinary actions, "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Leavitt*, 456 F. 3d 87, 91 (2d Cir. 2006).

The Court of Appeals for the Second Circuit has not categorically defined what circumstances permit an inference of discrimination. A "plaintiff must come forward with some evidence, beyond merely stating that he is a member of a protected class that suffered an adverse

employment decision." *Williams v. Palladia, Inc.*, 2009 U.S. Dist. Lexis 15516, 21-22 (S.D.N.Y. Feb. 10, 2009).

If the employer, in response, can articulate a "legitimate, nondiscriminatory reason" for the termination, the "burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz*, 584 F.3d at 499 (internal quotation marks and citation omitted).

### C. Retaliation

"In order to establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Rainone v. Potter*, 359 F. Supp. 2d 250, 256 (E.D.N.Y. 2005) (internal citations omitted).

A plaintiff may prove causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. N.Y. 2000.) A plaintiff may also demonstrate causation through a showing that she was subject to more severe penalties than other employees who had engaged in similarly unsatisfactory conduct. *DeCintio v. Westchester County Med. Ctr.*, 821 F. 2d 111 (2d Cir. 1987).

The Defendant may then rebut the plaintiff's prima face case by demonstrating that the facts of the prima facie case are not true or by demonstrating that it had a legitimate nondiscriminatory reason for sanctioning the employee as it did. "Once an employer has offered

a legitimate reason, the plaintiff's failure to produce significantly probative evidence of pretext entitles the defendant to summary judgment." *Hollins v. Hoechst Celanese Corp.*, 1991 U.S. Dist. LEXIS 11700, 10-11 (S.D. Ala. Aug. 13, 1991).

## IV. Application of Facts to Law

### A. Discrimination

Plaintiff has failed to establish a prima facie case of discrimination. She a) does not show an adverse employment action and b) does not allege any discriminatory intent or present any evidence giving rise to an inference of discrimination.

DoITT followed City policy and procedures in investigating M.'s original EEO claim and the code of conduct violation. S.A. did not suffer an adverse employment action rising anywhere near the level necessary under Title VII. As agreed to by the settlement of the internal conduct complaint, notice of the plaintiff's violation was expunged from her personnel records after her successful completion of a probation period.

DoITT followed New York City's reasonable policy for dealing with complaints as well as the procedures outlined in the Collective Bargaining Agreement governing Ms. S.A.'s position. "The terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. N.Y. 2006).

S.A. acknowledged and admitted her actions in the settlement agreement. In light of this uncontested admission of her behavior to the EEO Director, the DoITT's reliance on normal disciplinary procedures was appropriate and was not "adverse."

At no point does plaintiff allege that she was treated unfairly *based on her race, gender or religion* to establish a prima facie case of discrimination. *Williams v. Palladia, Inc.*, 2009

9

U.S. Dist. Lexis 15516, 21-22 (S.D.N.Y. Feb. 10, 2009). Plaintiff does not even make conclusory claims alleging discriminatory intent of her supervisors based on those factors. She likewise does not claim that she was treated any less favorably than comparators outside of her class.

An amendment to the pleading to make such allegation would be futile since the facts do not support such an amendment.

### B. Retaliation

S.A. has presented proof of both 1) protected activity known to the defendant and 2) adverse employment action for the purposes of raising a prima facie case of retaliation. She filed her initial EEOC complaint in September 2008 and then filed the present lawsuit in June 2009, so DoITT was fully aware of her protected activity. In May 2010, following an oral altercation with her shift colleagues, she was switched from the night to the day shift, which she claims will result in a $11,000 salary cut, although she will continue to work the same number of hours.

If the claim that this will result in less pay for her is true, this reduction in pay constitutes an "adverse action." But plaintiff does not identify proof of a causal connection between her protected activity and this schedule change, which occurred almost a full year after the advent of her Title VII claim against DoITT. She notes only that the two other workers involved in the dispute were not switched to the day schedule.

Assuming, *arguendo*, that plaintiff has demonstrated a causal connection for purposes of a prima facie retaliation claim, DoITT offers the uncontested May 19th dispute between S.A. and her colleagues, and the May 14th request for volunteers to switch to the day shift in rebuttal. They note that they moved another night shift worker to the day shift in order to accommodate

the increased volume. Plaintiff presents no evidence that this claim of business necessity is pretextual.

## V. Conclusion

Plaintiff fails to make a prima facie case for employment discrimination. She can demonstrate no adverse employment action. She presents no evidence from which a rational jury could infer discriminatory intent.

With respect to her retaliation claim, plaintiff has presented a *de minimis* prima facie case of retaliation. DoITT, has presented proof that it undertook its action for non-discriminatory reasons. Plaintiff offers no evidence that these reasons are pretextual.

The case is dismissed on the merits. No costs or disbursements.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 6, 2011
Brooklyn, New York